IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOCELYN GABRIEL, | : | 1:20-cv-1054 |
| Petitioner, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| WILLIAM BARR, *et al*., | : | |
| Respondents. | : | |

## MEMORANDUM

**January 27, 2021**

Jocelyn Gabriel ("Gabriel"), presently a detainee of the United States

Department of Homeland Security, Immigration and Customs Enforcement

("ICE"), incarcerated at the York County Prison, Pennsylvania, filed the instant

petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, challenging his pre-

final order removal detention and seeking release from custody. (Doc. 1).

The petition is ripe for disposition.  For the reasons set forth below, the

petition will be denied.[1]

## I.    BACKGROUND

Gabriel is a native and citizen of Haiti who entered the United States at New

York, New York, in October 2012, as the spouse of a lawful permanent resident

---

[1]  To the extent Gabriel raises the perils of COVID 19, this issue has been fully considered and adjudicated in *Gabriel v. Barr*, *et al*., 4:20-cv-1350 (M.D.Pa. Dec. 22, 2020) and, as such, warrants no further discussion.  In addition, the motion to expedite "due to a health crisis" (Doc. 10) will be denied as moot.

alien.  (Doc. 8-2, pp. 3, 4).  On June 16, 2018, he was arrested in Sussex County,

Delaware, for "Sex Assault" and "Intimidation."  (*Id.* at 4).  Thereafter, he was

convicted of Terroristic Threatening and Unlawful Sexual Contact Third Degree

and sentenced to 360 days imprisonment on both convictions.  (*Id.*).

ICE encountered him on June 21, 2019, in the Sussex Correctional

Institution in Georgetown, Delaware, at which time he admitted to the Deportation

Officer that he is a citizen and national of Haiti by virtue of birth and that, although

he entered the United States as the spouse of a Lawful Permanent Resident, he

made no application to naturalize.  (*Id.*).  ICE lodged a detainer against him at that

time.  (*Id.*).

On July 26, 2019, ICE took Gabriel into custody and served him with a

Notice to Appear charging him as removable pursuant to Section 237(a)(2)(E)(i) of

the Immigration and Nationality Act (INA) as an alien convicted of a crime of

domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or

child abandonment, and Section 3237(a)(2)(A)(ii) as an alien convicted of two

crimes involving moral turpitude not arising out of a single scheme of criminal

misconduct.  (*Id.* at 5).  On August 12, 2019, Gabriel admitted all factual

allegations but denied the two removability charges.  (*Id.* at 10).

Through counsel, he sought to terminate the removal proceedings arguing

that his conviction for Terroristic Threatening is not a crime involving moral

turpitude, his conviction for Unlawful Sexual Contact Third Degree is not a crime

of violence under 18 U.S.C. §16, and therefore cannot constitute a crime of

domestic violence under INA § 237(a)(2)(E)(i), and the Department of Homeland

Security ("DHS") failed to establish that his convictions arouse out of a single

scheme of criminal misconduct. (*Id.* at 10, 11).  On September 3, 2019, the

Immigration Judge ("IJ"), concluded as follows:

> While the Court finds that Respondent's convictions for Terroristic
> Threatening and Unlawful Sexual Contact in the Third Degree
> constitute CIMTs [crimes involving moral turpitude], the Court must
> find that these convictions arose out of a single scheme of criminal
> misconduct. *See Adetiba*, 20 I&N Dec. at 50910.  Additionally, because
> the Court also cannot find that Respondent's Terroristic Threatening
> conviction constitutes a crime of violence under 18 U.S.C. §16(a), his
> conviction cannot therefore constitute a crime of domestic violence
> under INA § 237(a)(2)(E)(i).  Thus, the Court cannot sustain either the
> INA § 237(a)(2)(A)(ii) or INA § 237(a)(2)(E)(i) removability charges
> and must terminate these proceedings.

(*Id.* at 18).  The IJ dismissed the removal proceedings with prejudice.  (*Id.*).  The

DHS appealed to the Board of Immigration Appeals ("BIA").  (*Id.* at 21).  Gabriel

requested an extension of time to file his brief, which the BIA granted.  (*Id.*).

A bond hearing was held on September 30, 2019, and on November 8, 2019,

the IJ determined that he failed to show that he was not a danger to the community

and denied bond.  (*Id.* at 31-34).  Gabriel appealed this decision to the BIA.  On

March 4, 2020, the BIA adopted and affirmed the IJ's November 8, 2019 decision

denying bond and dismissed the appeal.  (*Id.* at 35, 36).

In a recent separate court filing, it appears that, on August 27, 2020, the BIA sustained DHS's appeal, vacated the IJ's decision and remanded the matter for a new decision.  *See Gabriel v. ICE*, *et al*., 1:21-cv-0132 (M.D. Pa.) Doc. 1-3, pp. 3, 4.  Further, on September 25, 2020, Gabriel filed a petition for review in the United States Court of Appeals for the Third Circuit. *See electronic docket*, https://www.pacer.gov, *Gabriel v. Att'y Gen*., No. 20-2956 (3d Cir. 2020).  On January 7, 2021, the Third Circuit dismissed the petition for review for lack of jurisdiction as the BIA's August 27, 2020 order did not constitute a final order. *Gabriel v. Att'y Gen*., No. 20-2956 (3d Cir. 2020 Jan. 7, 2021) (Doc. 12-1).

According to the Executive Office for Immigration Review, an IJ granted CAT deferral on January 5, 2021; the appeal deadline expires on February 5, 2021. *See* https://portal.eoir.justice.gov/InfoSystem/CourtInfo.

Gabriel filed the instant petition on June 23, 2020.  At present, he has been in ICE custody for approximately 18 months.  However, a custody redetermination hearing took place in September 2019, the IJ issued a decision denying the custody redetermination in November 2019, and the BIA reviewed the appeal of the IJ's decision and issued a decision in March 2020, wherein it upheld the IJ's decision to deny bond and dismissed the appeal.

## II.    DISCUSSION

A prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989).  Because Gabriel is currently detained within the jurisdiction of this Court and asserts that his continued detention violates due process, this Court has jurisdiction over his § 2241 petition. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Generally, 8 U.S.C. § 1226 governs pre-removal order detention and 8 U.S.C. § 1231 governs post-removal order detention.  *Samba v. Lowe*, No. 3:18-cv-662, 2020 WL 599839, at *2 (M.D. Pa. Feb. 7, 2020).

Title 8 U.S.C. § 1226 instructs the Attorney General to detain aliens during ongoing removal proceedings.  *See* 8 U.S.C. § 1226.  Section 1226(c) applies to individuals pending a final order of removal and provides, in part, that the Attorney General is required to detain any noncitizen who "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B).  At present, Gabriel is  detained pursuant to 8 U.S.C. § 1226(c).

In the United States Supreme Court case of *Jennings v. Rodriguez*, — U.S. —, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018), the Supreme Court reversed the United States Court of Appeals for the Ninth Circuit's holding that non-citizens detained

under §§ 1225(b)(1), (b)(2), and 1226(c) are entitled to bond hearings every six months. *Jennings*, 138 S.Ct. at 842.  *Jennings* held that the language of section 1226(c) authorizes unlimited detention pending removal proceedings of an alien who is deportable on the basis of criminal involvement, and that no implicit restraint on the length of detention can be read into the statute. *Jennings*, 138 S.Ct. at 847.  Specifically, "§ 1226(c) is not 'silent' as to the length of detention. It mandates detention 'pending a decision on whether the alien is to be removed from the United States' ...  and it expressly prohibits release from that detention except for narrow, witness-protection purposes....  Indeed, we have held as much in connection with § 1226(c) itself.  In *Demore v. Kim*, 538 U.S., at 529, 123 S.Ct. 1708, we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings.  As we made clear there, that 'definite termination point'—and not some arbitrary time limit devised by courts—marks the end of the Government's detention authority under § 1226(c)." *Jennings*, 138 S.Ct. at 846.  Consequently, under the strict language of the statute, Gabriel is not entitled to a bond hearing pending the completion of removal proceedings.

However, "*Jennings* did not call into question [the] constitutional holding in *Diop* [*v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011)] that detention under § 1226(c) may violate due process if unreasonably long." *Borbot v. Warden Hudson*

*Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018).  Recently, in *Santos v.*

*Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020), the Third

Circuit confirmed that as-applied due-process challenges to mandatory detention

under Section § 1226(c) survive *Jennings*. *See Santos*, 965 F.3d at 208-10.  In

conducting an as-applied due-process analysis, courts must consider the duration of

detention, the likelihood that detention will continue, the reasons for the delay, and

whether the conditions of confinement "are 'meaningfully different[ ]' from

criminal punishment."  *Id.* at 211.

It remains the case that the "constitutionality of [§ 1226(c) detention] is a

function of the length of the detention [and the] constitutional case for continued

detention without inquiry into its necessity becomes more and more suspect as

detention continues," and "any determination on reasonableness [must be] highly

fact specific." *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 474–75

(3d Cir. 2015); *see also Diop*, 656 F.3d at 232, 234.  "[D]ue process requires us to

recognize that, at a certain point—which may differ case by case—the burden to an

alien's liberty outweighs a mere presumption that the alien will flee and/or is

dangerous. At this tipping point, the Government can no longer defend the

detention against claims that it is arbitrary or capricious by presuming flight and

dangerousness: more is needed to justify the detention as necessary to achieve the

goals of the statute. As we said in *Diop*, section 1226(c) 'implicitly authorizes

detention for a reasonable amount of time, after which the authorities must make

an individualized inquiry into whether detention is still necessary to fulfill the

statute's purposes of ensuring that an alien attends removal proceedings and that

his release will not pose a danger to the community.' *Id.* at 231." *Chavez-Alvarez*,

783 F.3d at 474-75.  The prolonged mandatory detention of an alien will therefore

amount to an unconstitutional application of § 1226(c) only where the alien's

prolonged detention has become "so unreasonable [that it] amount[s] to an

arbitrary deprivation of liberty [which] cannot comport with the requirements of

the Due Process Clause." *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J.

2018); *see also Demore*, 538 U.S. at 432; *Chavez-Alvarez*, 783 F.3d at 474.

Initially, we emphasize that we cannot afford Gabriel the requested relief of

release from custody.  We will, however, consider the *Santos* factors in

determining whether Gabriel is entitled to a bond hearing.

At first blush, Gabriel's detention, approximately eighteen months, would

seem to favor granting him an individualized bond hearing as longer periods of

detention, in the absence of bad faith, have been found to be so prolonged as to be

an arbitrary, and thus an unconstitutional application of §1226(c) absent a bond

hearing.  *See, e.g., Clarke v. Doll*, No. 3:20-CV-31, 2020 WL 4933696, at *1 (M.D.

*Pa. Aug. 24, 2020) (*applying *Santos* factors in considering twenty months

detention and granting individualized bond hearing); *Chikerema v. Lowe,* No. 1:18-

cv-1031, 2019 WL 3891086, (M.D.Pa. Aug. 19, 2019 (concluding detention for

more than twenty months warranted an individualized bond hearing absent bad

faith, *inter alia*): *K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at * 4 (D.N.J.

Aug. 7, 2018) (determining detention of nineteen months in the absence of bad

faith on Petitioner's part warranted a bond hearing where Petitioner was pursuing a

valid petition for review before the Third Circuit and had received a stay of

removal); *Vega v. Doll*, No. CV 3:17-1440, 2018 WL 3756755, at *5 (M.D. Pa.

Aug. 8, 2018) (finding detention for twenty-one months has become so prolonged

that it has become arbitrary and unreasonable in this particular case such that

petitioner is entitled to an individualized bond hearing); *Destine v. Doll*, No. 3:17-

CV-1340, 2018 WL 3584695, at *5 (M.D. Pa. July 26, 2018) (same).  However, in

the matter *sub judice*, following the IJ's September 3, 2019 decision terminating

the removal proceedings, an IJ held a bond hearing or "custody redetermination"

on September 30, 2019, and issued a memorandum decision on November 8, 2019,

denying his request for custody redetermination because he failed to demonstrate

that he was not a danger to the community.  (Doc. 8-2, pp. 31-34).  Gabriel

appealed the decision to the BIA and, on March 4, 2020, the BIA issued a decision

finding no clear error in the IJ's decision and dismissing the appeal.  (*Id.* at pp. 35,

36).  Hence, it is clear that his detention status has been reviewed in the last ten to

eleven months.  District courts in this circuit have largely found that detention for

just over a year pursuant to § 1226(c) is insufficient to amount to an arbitrary deprivation of liberty and will thus not suffice to prove that the statute has been unconstitutionally applied. *Dryden*, 321 F. Supp. 3d at 502–03 (detention for just over a year not unconstitutional); *Fernandez v. Lowe*, No. 3:17-CV-2301, 2018 WL 3584697, at *4 (M.D. Pa. July 26, 2018) (detention for fifteen months not unconstitutional given regular progression of proceedings); *Carlos A. v. Green*, No. 18-741, 2018 WL 3492150, at *5 (D.N.J. July 20, 2018) (detention for just over thirteen months not unconstitutional). Compare *Romeo S.K. v. Tsoukaris*, No. CV 20-5512 (JMV), 2020 WL 4364297, at *12 (D.N.J. July 29, 2020) (applying *Santos* factors, denying relief for eleven months of detention). Thus, this factor, which the *Santos* Court considered to be "the most important", does not trigger heightened scrutiny and weighs against relief at this time. *Santos*, 965 F.3d at 211.

With respect to the likelihood that the detention will continue, although it appears that there may be additional proceedings because the appeal period of the latest IJ decision expires on February 5, 2021, this carries little weight as, to date, all proceedings have proceeded in a timely manner without any significant delay attributable to either side.

We next consider the reasons for the delay, such as the detainee's requests for continuances. In *Santos*, the court reiterated "we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for

10

relief have drawn out the proceedings," and that "counting this extra time as reasonable ... would effectively punish [an alien] for pursuing applicable legal remedies." *Santos*, 965 F.3d at 211 (quoting *Chavez-Alvarez*, 783 F.3d at 475, 476-77). Although "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute," *Chavez-Alvarez*, 783 F.3d at 476, where an alien's detention becomes unreasonably prolonged merely because he has pursued valid challenges to his removal, his detention may eventually become so arbitrary that the Due Process clause requires a bond hearing. *See K.A. v. Green*, 2018 WL 3742631, at * 4. There is no indication that Gabriel has engaged in bad faith or caused significant delay. Rather, by all appearances, he has vigorously and timely, although, at times, procedurally incorrectly, challenged his removal.

The final factor is whether the detention is comparable to criminal punishment. Gabriel's detention status has been evaluated within the last ten months and there is no indication that there has been any culpable delay by the government in prosecuting its removal case. We are also cognizant that, according to the Executive Office of Immigration Review case status website, an IJ recently granted Gabriel CAT deferral which, presumably, would result in a request for a custody redetermination. Thus, we cannot say that the present detention, which

has been reviewed by immigration officials within the last ten to eleven months,

and is authorized by statute, is unconstitutionally punitive.

## III.   **CONCLUSION**

For the above stated reasons, the Court will deny the petition pursuant to 28

U.S.C. § 2241 without prejudice.

An appropriate Order shall issue.